T. J. FLEMING v. CHARLOTTE ELECTRIC RAILWAY COMPANY AND SOUTHERN PUBLIC UTILITIES COMPANY.

(Filed 23 February, 1927.)

**1. Negligence—Street Railways—Collisions—Automobiles.**

An electric street railway company, through its employees on a car operating upon its tracks upon the streets of a city is held to the exercise of due care under the circumstances in avoiding a collision with an automobile crossing its tracks in front of the car, and where the evidence is conflicting as to whether the driver of the automobile reasonably thought that the defendant's car .had about stopped at the wrong place to let passengers off, and suddenly and without warning started ahead, and thereby caused the collision, which would not have occurred had the defendant's motorman kept a lookout in front of him, and exercised due care, defendant's request for a directed verdict in its favor is properly refused.

**2. Instructions—Negligence—Proximate Cause.**

While in an action to recover damages for an injury alleged to have been negligently inflicted, the judge should ordinarily define the meaning of "proximate cause" as applied to the evidence of the case, his omission to do so will not be considered as reversible error to the defendant's prejudice, when he has not done so with reference to the issue of contributory negligence, and the jury could not have misunderstood the principles under the general charge.

**3. Same—Excerpts from Charge—Considered as a Whole — Appeal and Error.**

Instructions if correct when considered as a whole will not be held as reversible on appeal because of seeming error, when regarded in its disjointed or fragmentary parts.

APPEAL by defendants from *Harding, J.,* and a jury, at May Term, 1926, of MECKLENBURG. No error.

This is an action for actionable negligence by plaintiff against defendants for injuries sustained in a collision with a street car of defendants. Plaintiff's allegations were to the effect: that the street car of defendants, on the evening of 13 May, 1925, at about 8:30 o'clock p.m. was being operated over its tracks on South Tryon Street. It had to turn at West Bland Street. That the mortorman in charge of the street car had practically "brought same at or almost near to a standstill as if to let off two passengers, which said passengers were then aboard said street railway car, and had gone to the front of said street railway car as if to alight therefrom," although the regular stoppage was around the curve and on West Bland Street. That plaintiff was driving an automobile going south on his way home and, believing that defendant was stopping its car for the purpose of letting passengers off, and believing it would remain stopped long enough to allow the two

passengers to alight, proceeded with due care to continue his travel on South Tryon Street towards his home, and when he got about mid-center of the defendant's track the defendant, through its agent the motorman, suddenly and without warning or notice started up the street car. That by keeping a proper lookout he saw, or in the exercise of ordinary care could have seen, plaintiff crossing the track, and did wilfully, wantonly and negligently run the street car into plaintiff's automobile and pushed it some 15 or 20 feet down its track and jammed the plaintiff's automobile in which he was sitting against a pole, wrecking the car and seriously injuring plaintiff.

Among the allegations of defendants' negligence was the fact that after striking plaintiff's automobile, defendant failed to stop the street car, but continued to push the automobile some 15 or 20 feet against the lighting pole and injured plaintiff. That defendant was negligently stopping its car "at the wrong place, thereby subtly luring, misleading and deceiving plaintiff, making said plaintiff believe that the said defendants were going to stop one hundred feet or more this side of said regular stopping place," etc.

These allegations of plaintiff were denied by defendants. Defendants allege that instead of defendants running into the plaintiff, the plaintiff ran his automobile into the street car of defendants. "That the plaintiff undertook to overtake said street car and get ahead of it before it made the turn into West Bland Street, and in doing so ran into the street car as it was making the turn and knocked off the front door of said street car." Defendants, as a further defense, set up the plea of contributory negligence.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.

"2. Did the plaintiff by his own negligence contribute to his injury as alleged in the answer? Answer: No.

"3. What damages, if any, is the plaintiff entitled to recover? Answer: Ten thousand dollars ($10,000)."

Numerous assignments of error were made by defendants and appeal taken to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*T. L. Kirkpatrick and J. A. Lockhart for plaintiff.*
*W. S. O'B. Robinson, Jr., for defendants.*

CLARKSON, J. The first contention of defendant is: "His Honor erred in refusing to instruct the jury that if they found the facts to be as testified to by the witnesses and as disclosed by the evidence, they

should answer the first issue in the negative, as requested by the defendants' first prayer for instructions; and also in refusing to instruct the jury that if they found the facts to be as testified to by the witnesses and as disclosed by the evidence, they should answer the second issue in the affirmative as requested by the defendants' second prayer for instructions." We think the court below correct in refusing to instruct the jury as requested by defendants.

For example, as to plaintiff's contention of defendants' negligence, one of his witnesses, John Robinson, testified as follows: "I know Mr. Fleming. . . . I came along West Bland Street near the intersection of West Bland Street and Tryon on 13 May, 1925, about 8:30 p.m. . . . I saw Mr. Fleming's car and the street car, the street car and the automobile coming down the street. The street car came nearly to a standstill. It was not far from the corner, and just was rolling. Mr. Fleming was crossing the track, and the street car started up. It pushed the car around the corner. I couldn't tell how fast the street car started up. It pushed the car around the corner, up against the post about fifteen feet."

Numerous witnesses testified, including plaintiff, that the occurrence was as testified to by the above witness. The defendants' numerous witnesses disputed these facts and testified to the effect that plaintiff in trying to get ahead of the street car before it made the turn into Bland Street ran into the street car and knocked off its front door.

Plaintiff contends that he drove his automobile ahead of the street car and upon the track. The motorman, without giving any warning whatever, suddenly speeded up the street car and struck plaintiff's automobile. At the rate of speed at which he was traveling, he could have stopped the street car almost instantly, certainly in a distance of three or four feet, but after striking plaintiff's automobile, he continued to run the street car and pushed the plaintiff's car a distance of 15 to 18 feet and jammed it against a light post and *then inflicted the injuries here complained of.*

In *Ingle v. Power Co.,* 172 N. C., at p. 753, it is said: "The motorman is required to run at a lower rate of speed and observe a more careful lookout for persons who may cross, and ordinarily are crossing, a street car track at all hours. The street car company has no right to the exclusive use of the street, and it must respect the rights of pedestrians and drivers of vehicles of all kinds, who have the same right to use the streets as themselves. *Norman v. R. R.,* 167 N. C., 537; *Moore v. Street R. R.,* 128 N. C., 458." *Hanes v. Utilities Co.,* 191 N. C., 13.

The principle is thus stated in *Heinel v. People's Ry. Co.,* 67 Atl. Rep., at p. 173 (22 Del., 428): "Both the plaintiff and the defendant had a right to use it (street) for all purposes of a public highway. The

right of each must be exercised with a regard to the rights of the other, and in a reasonable and careful manner, so as not unreasonably to abridge or interfere with the rights of the other. . . . Therefore, if the plaintiff had negligently gone upon or near the car track without looking, and was so standing there with his back to the car at the time of the accident, yet if the motorman saw, or by the reasonable use of his sense could have seen, the plaintiff so standing in time to stop the car and avoid the accident, it was his duty to do so, and if he failed to do so the company would be liable. If, however, the plaintiff moved from a position of safety to a position of danger near or upon the track of the railway on which the car was running so suddenly as to make it impossible for the motorman to stop the car before the collision, the defendant cannot be held liable for the resulting injury to the plaintiff; so, if the motorman, after he saw, or by the exercise of reasonable care could have seen, the plaintiff in a position of danger, did everything that a reasonably careful and prudent man would do under like circumstances to prevent the accident, the defendant would not be liable."

The evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

We think there was evidence sufficient to justify plaintiff's contention and the court below in submitting the matter to the jury.

Although not tried out on the theory of last clear chance, yet the allegations of plaintiff in the complaint would also have entitled him to the issue and the evidence is plenary to support it.

In the celebrated case of *Davies v. Mann*, Vol. 10, M. & W. Reports, p. 546, *Parke, B.*, all the Judges concurring, held to be "perfectly correct" *Lord Erskine's* charge: "The learned judge told the jury that, though the act of the plaintiff, in leaving the donkey on the highway so fettered as to prevent his getting out of the way of carriages traveling along it, might be illegal, still, if the proximate cause of the injury was attributable to the want of proper conduct on the part of the driver of the wagon, the action was maintainable against the defendant; and his Lordship directed them, if they thought that the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff." *Casada v. Ford*, 189 N. C., at p. 746 and cases cited.

Defendant further contends: "His Honor erred in failing to declare and explain to the jury the meaning of the term 'proximate cause'; or to instruct the jury what facts they must find in order to arrive at a verdict that the negligence of the defendant was the proximate cause of the plaintiff's injury."

In the case of *Davies v. Mann, supra, proximate cause* was not defined. It ordinarily should be, but in the present case it will not be held prejudicial error, as it was not defined as an element either in negligence or contributory negligence.

In *Construction Co. v. R. R.,* 184 N. C., p. 179, the charge on contributory negligence in the court below was: " 'If you answer the first issue "Yes," you will then consider the second issue; the burden is on the defendant in that issue to prove by the greater weight of the evidence that the plaintiff's servant driving the truck, was negligent, and that his negligence contributed to the injury.' . . . Counsel for plaintiff requested the court to add to his charge the further instruction that, unless such negligence on the part of plaintiff's driver was *the proximate cause of the injury,* they would answer the second issue 'No.' This was declined. . . . It would seem that the plaintiff was entitled to this additional instruction." *Campbell v. Laundry,* 190 N. C., 649. The error in the *Construction Co. case, supra,* was in not charging that it must be the proximate cause. The definition was not requested.

As to the other assignments of error (3d and 4th), in reference to the charge of the court below, the two excerpts cannot be sustained. The charge must be considered and examined as a whole.

10 S. E. Digest, N. C. Ed., Trials, p. 12589: "Instructions must be considered as a whole, and if, as a whole, they state the law correctly, there is no reversible error, although a part of the instructions considered alone may be erroneous," citing numerous North Carolina cases.

As said in *Davis v. Long,* 189 N. C., at p. 137: "The case is not complicated as to the law or facts. The jurors are presumed to be men of 'good moral character and sufficient intelligence.' They could easily understand the law as applied to the facts." *Kepley v. Kirk,* 191 N. C., p. 690. We can find

No error.